UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| SAVE OUR WETLANDS, INC. and LUKE FONTANA,<br><br>                    Plaintiffs,<br><br>v.<br><br>The CITY OF NEW ORLEANS; MAYOR LATOYA CANTRELL, in her official capacity; MICHAEL HARRISON, FORMER SUPERINTENDENT OF THE NEW ORLEANS POLICE DEPARTMENT, in his official capacity; SHAUN FERGUSON, SUPERINTENDENT OF THE NEW ORLEANS POLICE DEPARTMENT, in his official capacity; and NEW ORLEANS POLICE OFFICERS BARRY SCHECHTER, SIDNEY JACKSON, JR. and ANTHONY BAKEWELL, in their official capacities,<br><br>                    Defendants. | CIVIL ACTION NO.: 2:19-cv-09120<br><br>JUDGE: ASHE<br><br>MAGISTRATE JUDGE: WILKINSON |

## AMENDED COMPLAINT

### INTRODUCTION

1. For more than five years, the City of New Orleans (the "City") has engaged in an effort to stymie free speech in public spaces termed "clean zones." Beginning with the 2013 Super Bowl, the City has enacted zoning ordinances to temporarily create such "clean zones" in which permits, advertising, business transactions, and commercial activity are

1

strictly prohibited. Clean zones have been enacted for various public events including the Superbowl, French Quarter Festival, Satchmo Festival and Essence Festival. These zones effectively outlaw the freedom of expression in an effort to protect certain private economic interests. The New Orleans Police Department ("NOPD") enforces the City's "clean zones" by arresting persons engaged in public speech perceived as inimical to those interests.

2. During the French Quarter Festival in April 2018, Plaintiff Luke Fontana was doing what he has done for several years: standing behind a display table on the Moonwalk near Jax Brewery by the Mississippi riverfront. An environmental activist, Mr. Fontana was engaged in political speech, opposing a crude oil pipeline planned to cut across the Atchafalaya Basin. Mr. Fontana did not solicit, hail, or otherwise stop passersby—he only engaged those persons who stopped to inquire about his campaign and his organization, Save Our Wetlands. Fontana's table offered informational materials about various environmental campaigns and an opportunity for people to join his organization. New Orleans police officers approached and told Mr. Fontana he would have to "pack up." When Mr. Fontana refused, they arrested him, and he spent the night in jail. He was injured during the arrest and required medical attention upon his release.

3. Mr. Fontana brings this Complaint seeking a declaratory judgment that the City's "clean" scheme is an unconstitutional violation of the First Amendment. Plaintiffs further seeks an injunction barring enforcement of the scheme to the extent that it forbids and/or punishes free expression. He seeks training for police officers on the First Amendment. He was wrongfully arrested, his materials were wrongfully seized, and he was wrongfully

imprisoned. He seeks compensatory damages for the arrest, seizure, and detention, as well as for his medical bills.

## JURISDICTION AND VENUE

4. Plaintiffs brings this action under the First, Fourth, and Fourteenth Amendments to the United States Constitution, and 42 U.S.C. §§ 1983 and 1988.

5. The Court has jurisdiction over Plaintiffs' federal claims pursuant to 42 U.S.C. § 1331 (federal question).

6. Venue is proper pursuant to 28 U.S.C. § 1391(b)(1) because the Defendants reside in this district and 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this district.

7. Declaratory relief is authorized by 28 U.S.C. §§ 2201 and 2202. A declaration of law is necessary to determine the respective rights and duties of the parties.

## PARTIES

8. Plaintiff Save Our Wetlands, Inc. ("SOWL") is a private, nonprofit organization organized for bona fide nonprofit purposes pursuant to the provisions of the Louisiana Nonprofit Corporation Law, La. R.S. 12:201, *et seq*. Founded in 1974, SOWL is an environmental advocacy group dedicated to preserving Louisiana's wetlands.

9. Plaintiff Luke Fontana is a resident of Orleans Parish. He is an environmental activist and the president of SOWL.

10. Defendant, the City of New Orleans, is a political subdivision of the State of Louisiana and a municipal corporation organized under the laws of the State of Louisiana and the Home Rule Charter of the City of New Orleans, subject to the jurisdiction and venue of

this Court. At all times relevant hereto the City acted within the scope of its authority as a municipality chartered under the laws of the State of Louisiana.

11. Defendant LaToya Cantrell is the Mayor of the City of New Orleans. Mayor Cantrell is the final policymaker for the New Orleans Police Department, having supervision and final hiring and firing authority over the superintendent of the NOPD. Mayor Cantrell enacted the Clean Zone ordinance passed by City Council and is ultimately responsible for authorizing the police department to make arrests pursuant thereto. Alternatively, she has delegated her final policymaking authority regarding arrests and officer training and supervision to the superintendent of NOPD.

12. Defendant Michael Harrison is the former superintendent of the NOPD; he was the NOPD superintendent at the time of Mr. Fontana's arrest on April 13, 2018. As superintendent, Mr. Harrison was the final policymaker for NOPD, responsible for the supervision, administration, policies, practices, procedures and customs of the NOPD, including specific policymaking authority on when arrests are to be made. He was responsible for the training, discipline, supervision, and control of the NOPD officers, including the officers named as Defendants herein, and including training on the First Amendment. Mr. Harrison is sued in his official capacity.  Upon information and belief, Defendant Shaun Ferguson should be substituted for Defendant Harrison in this official capacity suit.

13. Defendant Shaun Ferguson is the present superintendent of the NOPD. As superintendent, Mr. Ferguson is the final policymaker for NOPD, responsible for the supervision, administration, policies, practices, procedures and customs of the NOPD, including specific policymaking authority on when arrests are to be made. He is

responsible for the training, discipline, supervision, and control of the NOPD officers, including the officers named as Defendants herein, and including training on the First Amendment. Mr. Ferguson is sued in his official capacity.

14. Defendant Barry Schechter is a police officer with the NOPD. Mr. Schechter was working a paid detail at the French Quarter Festival on April 13, 2018, when he participated in the arrest of Mr. Fontana and the seizure of his materials. His present rank is unknown. He is sued in his official capacity.

15. Defendant Anthony Bakewell is a police officer with the NOPD. Mr. Bakewell was working a paid detail at the French Quarter Festival on April 13, 2018, when he participated in the arrest of Mr. Fontana and the seizure of his materials. His present rank is unknown. He is sued in his official capacity.

16. Defendant Sidney Jackson is a police officer with the NOPD. Sgt. Jackson was working a paid detail at the French Quarter Festival on April 13, 2018, when he participated in the arrest of Mr. Fontana and the seizure of his materials. At the time, Sgt. Jackson was a sergeant serving as the supervisor of Officers Bakewell and Schechter. His present rank is unknown. He is sued in his official capacity.

**FACTUAL ALLEGATIONS**

17. On April 12, 2018, Plaintiff Luke Fontana set up a table display on behalf of Save Our Wetlands, Inc. on the Moonwalk beside the Mississippi River near the intersection of St. Peter Street and Decatur Street.

18. April 12 was a Thursday, and it was the first day of the 2018 French Quarter Festival.

19. Mr. Fontana engaged in political speech, protesting a crude oil pipeline planned to cut across the Atchafalaya Basin. Mr. Fontana did not solicit, hail, or otherwise stop

passersby—he only engaged those persons who stopped to inquire about his campaign and his organization. His table did not impede pedestrian traffic on the public walkway.

20. Mr. Fontana had brochures and leaflets on offer, and he offered memberships in his organization. Mr. Fontana also offered several items given to Save Our Wetlands members, including anti-pipeline lapel buttons, T-shirts, umbrellas, and hats. These items were given free to new members who signed up for membership. Mr. Fontana did not offer any items for sale.

21. Mr. Fontana engaged in his campaign for several hours on Thursday, April 12, working throughout the first day of the French Quarter Festival, without incident. He was not approached by any police officers, Festival representatives, or City staff on April 12.

22. On April 13, 2018, Mr. Fontana returned to the same location and engaged in the same activity on the second day of the French Quarter Festival.

23. According to a police report, at about 4:20 p.m., NOPD officer Barry Schechter was informed by a French Quarter Festival staff member that "an unknown male set up a stand in an unauthorized zone within the event."

24. Officer Schechter approached Mr. Fontana and told him he would have to pack up his things and leave. Mr. Fontana refused, saying that what he was doing was protected by the First Amendment to the United States Constitution.

25. Mr. Fontana produced a consent judgment from a previous case litigated in Orleans Parish Civil District Court after Mr. Fontana's interactions with police outside the New Orleans Jazz and Heritage Festival in 2000.

26. The consent judgment between Save Our Wetlands, Inc., and the City, which was signed on Nov. 28, 2000, provides in part that City representatives, including NOPD officers, "shall not interfere with, harass, intimidate or obstruct members or representatives of plaintiff, Save Our Wetlands, Inc. from, or arrest such members for, the distribution of informational literature or pamphlets to, and/or enlisting new members from, the general public who are attending the New Orleans Jazz & Heritage Festival[.]"

27. Officer Schechter refused to review Mr. Fontana's consent judgment and again instructed Mr. Fontana to take his table down.

28. Mr. Fontana asked to speak to a police supervisor, at which point Sgt. Jackson was summoned.

29. Sgt. Jackson took the consent judgment from Mr. Fontana, read it, and told Mr. Fontana that it was "no good." He told Mr. Fontana, "Now close up here or we're going to arrest you."

30. Sgt. Jackson said he would issue Mr. Fontana a summons, and Mr. Fontana replied that he would accept a summons. However, Sgt. Jackson insisted that Mr. Fontana would have to remove his table and materials, or he would be arrested. "If you don't leave here, we're going to arrest you," Sgt. Jackson said.

31. At that point, Mr. Fontana submitted to the unlawful arrest. Officer Bakewell arrived at the scene, and he handcuffed Mr. Fontana, then placed him in a van, where he was transported to Orleans Parish Prison for booking.

32. Mr. Fontana had a dislocated shoulder, and he was recovering from hernia surgery. Because of the way officers had handcuffed his hands behind his back and positioned his

body in the van, Mr. Fontana was in terrible pain. He groaned aloud and asked the officers to help him, but they refused.

33. According to a police report, NOPD took action against Mr. Fontana after being notified that he "set up an unauthorized stand inside the Clean Zone 'restricted area' of the [French Quarter Festival] event."

34. However, NOPD charged Mr. Fontana with unrelated violations of the New Orleans Municipal Code of Ordinances ("Municipal Code"): §§ 110-67[1] ("Special area") and 150-953[2] ("New business; license due upon commencement").

35. Neither of these provisions applied to Mr. Fontana.

36. Mr. Fontana spent about 10 hours in jail, and he was released on the morning of April 14, 2018.

---

[1] "A special permit shall be issued to applicants who intend to vend in that area bounded by the Mississippi River, the downtown side of Esplanade Avenue, the river side of Rampart Street, and the Vieux Carré side of Canal Street, inclusive. Such permit shall be issued under the conditions and for such fee as required in this division. The special permit shall be valid for this area only, but nothing contained herein shall be construed to prohibit the permit holder from acquiring for a separate fee a permit to vend elsewhere as is permitted under this division. The maximum number of special permits which may be issued and valid at any one time shall be 18. All special permits shall be renewable for a period of 30 days after their expiration date provided all conditions are met."

[2] "No person shall commence any business within the city without first paying a tentative license tax and after obtaining the approval of the department of safety and permits. Within 40 days after commencing the business, each person shall compute in the manner provided by section 150-957 the balance of the license tax, if any, owed for the year in which the business is started and pay such tax balance. When the business is begun prior to July first of any year, the tentative tax shall be the minimum annual rate for the particular class of business in cases in which the tax is based on gross receipts, sales, fees, premiums or commissions, or the full annual rate in cases in which the tax is based on a specific amount per unit. When the business is begun on or after July first of any year, the tentative tax shall be one-half of the minimum annual rate or the specific amount per unit, as the case may be."

37. On April 16, 2018, NOPD spokesman Beau Tidwell defended the officers' actions, saying Mr. Fontana "was arrested by our officers enforcing the 'Clean Zone' ordinance, passed by the City Council last December."[3]

38. According to court documents Mr. Fontana ultimately was charged with one of the previously cited violations of the New Orleans Municipal Code, §150-953 ("New business; license due upon commencement"), as well as a different violation § 130-67 ("Permit required").[4]

39. Neither of these provisions applied to Mr. Fontana. Another provision in the Municipal Code specifically exempts nonprofit organizations such as Save Our Wetlands. See § 150-970 ("Exemptions") from the license requirement cited in §150-953. The latter provision applies to persons engaged as "a secondhand jewelry dealer."

40. Both of these charges ultimately were dropped after Mr. Fontana attended several court hearings.

41. Mr. Fontana intends to resume his activities on behalf of Save Our Wetlands, Inc. at this year's French Quarter Festival, but he fears arrest and prosecution if he proceeds as planned.

---

[3] Doug MacCash, *Charges Dropped Against Environmental Activist Arrested at French Quarter Fest*, NOLA.COM/THE TIMES-PICAYUNE, May 3, 2018, at https://www.nola.com/crime/2018/05/luke_fontana_french_quarter_fe.html (last visited April 8, 2019).
[4] "Any person engaging in business as a secondhand jewelry dealer shall annually apply to the director of the department of finance for a permit on a form provided by the department. The application shall include the complete name and address of the place of business; the name, address, social security number and birthdate of the owners, proprietors, partners or principal incorporators and a sworn statement showing that the applicant or any of the parties listed on the application has not been convicted of either a felony under the laws of the United States or the state or of a local misdemeanor that is related to the applicant's business within the previous five years. The director of the department of finance shall cause an examination of police records to be made in order to verify this sworn statement. The findings of any such conviction or the filing of false information shall be sufficient cause for the denial of this permit. This permit shall be valid for one calendar year. Upon approval of the application by the department of finance and payment of the permit fee as provided by section 30-1281 et seq. a permit shall be issued to the applicant."

9

## "Clean Zones"

42. The City adopted a "clean zone" as part of its preparation for the Feb. 3, 2013 Super Bowl (Super Bowl XLVII), establishing an area on New Orleans, specifically the French Quarter, the Faubourg Marigny, and the Central Business District, where between Jan. 28, 2013 and Feb. 3, 2018, special prohibitions applied, including prohibitions on banners, flags, and signs.

43. Anyone who wished to display a banner, flag, or sign, in that zone during that time period was required to apply for a permit, and only official NFL sponsors could apply. All such banners, flags, and signs were required to consist of at least 60 percent Super Bowl and/or NFL branding, and no more than 40 percent third-party commercial identification.

44. On behalf of Tara Ciccarone and Pastor Troy Bohn, the ACLU of Louisiana filed a lawsuit on January 24, 2013, saying that the "clean zone" unconstitutionally restricted free speech. *See Ciccarone v. City of New Orleans*, No. 2:13-cv-133 (E.D.La. March 8, 2013).

45. Hours after the Complaint was filed, the Court granted a temporary restraining order.

46. On Jan. 28, 2013, the parties presented the Court with a proposed consent judgment that had been negotiated by the parties; the consent judgment was granted.

47. Expanding on the Super Bowl "clean zone," the City subsequently passed similar ordinances effective in areas around the French Quarter for two festivals: the French Quarter Festival ("FQF") and the Satchmo SummerFest ("SSF").

48. On December 14, 2017, the New Orleans City Council passed Ordinance No. 32,047 establishing "clean zones" between April 9 and April 16, 2018 as well as between July 30 and August 6, 2018.

49. Ordinance No. 32,047 (the "Ordinance") created a zone "generally bounded by the Mississippi River to Religious Street via Orange Street, Tchoupitoulas Street to Calliope Street, Dryades Street to Rampart Street, Elysian Fields Avenue, along Frenchmen Street to include Washington Square Park, the Historic Treme District and the east bank of the Mississippi River, including Woldenberg Riverfront Park and Spanish Plaza, Louis Armstrong Park, Crescent Park, and the Louisiana State Museum's New Orleans Jazz Museum at the Mint; including the airspace above the specified boundaries."

50. The Ordinance states that because the festivals "will attract hundreds of thousands of visitors, dignitaries, and media who will be in attendance, it is necessary that certain areas in and around events related to the FQF and SSF be regulated and controlled to provide for the public health, safety, and welfare of participants[.]"

51. The Ordinance prohibited on public streets or sidewalks, *inter alia*, transacting any business; the sale or sampling of food or beverages; the sale of merchandise; general and mobile advertising; commercial or promotional filming; and tents. It also suspended "all permits relative to the sale of merchandise and/or the transaction of business." (Generally, the "clean zone Restrictions.") See Ordinance No. 32,539, attached as Exhibit A.

52. The Ordinance specifically prohibits "The sale, sampling or distribution of unauthorized or illegal, non-licensed merchandise, regardless of exemption provided for in this ordinance or elsewhere in the City Code[.]"

53. The Ordinance does not define "business," "merchandise" or "advertising."

54. Violation of the ordinance carried a maximum punishment of a $500 fine and six months' imprisonment.

55. The Ordinance was in effect at the time of Mr. Fontana's arrest, and the NOPD was acting to enforce the Ordinance when its officers arrested Mr. Fontana.

56. Again in 2019 the New Orleans City Council passed Ordinance No. 32,539, creating temporary "clean zones" for FQF and SSF, respectively, from April 8 to April 15, 2019, and from July 29 to August 5, 2019. It is virtually identical to the previously passed measure, having the same geographic boundaries, prohibitions, and penalties. (For ease of reference, both measures will be referred to as "the Ordinance.")

57. The City, through the Ordinance and its enforcement and otherwise, has created a policy or practice of quelling free speech in its established "clean zones."

58. Through its enforcement of the Ordinance, including the arrest of Mr. Fontana, the City has chilled the exercise of free speech within its "clean zones."

59. NOPD officers, acting under the direction of their superintendent and mayor, actively enforced a policy or practice of suppressing free speech within the City's "clean zone."

60. The City and Defendants are on notice as to the unconstitutionality of Mr. Fontana's arrest.

61. The unlawful nature of arrest for protected speech and expression is obvious and contrary to long-standing clearly established law of this Circuit, including many suits against these Defendants for unlawful arrest of persons engaged in protected speech on City streets.

62. Additionally, Defendants have been sued by Mr. Fontana to protect speech outside of the Jazz and Heritage Festival, and Defendants have been sued for the unconstitutional overbreadth of its clean zone ordinances when applied to protected speech.

63. Defendants continue to act unlawfully, enforcing unconstitutional policies and practices.

64. Defendants further continue to fail to train and supervise NOPD officers in the First Amendment.

## CAUSES OF ACTION

### FIRST CLAIM
**(The First Amendment: The Clean Zone ordinance imposes a prior restraint on free speech and is facially unconstitutional.)**

65. Plaintiffs reallege and reincorporates the above allegations.

66. The Clean Zone imposes viewpoint-based restrictions on certain speech in a traditional public forum.

67. The Clean Zone discriminates upon the basis of viewpoint, because it allows some preferred speakers to advertise, transact business, etcetera, but does not allow speakers of a different viewpoint to engage in the same activity, even where their activity is protected by the Constitution as a fundamental right. Mr. Fontana believes it significant that the French Quarter Festival is sponsored by Chevron, whose speech, business transactions and advertising is explicitly favored and allowed by the City's ordinance. He, conversely, seeks to protest oil pipelines and is disallowed from speaking.

68. The Clean Zone also is a prior restraint on protected speech in a public forum.

69. Accordingly, the Clean Zone is subject to strict scrutiny.

70. The City has no compelling interest necessitating the Clean Zone restrictions.

71. Even if the City had a compelling interest necessitating those restrictions, the restrictions are not so narrowly-tailored that no less restrictive measures would satisfy the City's interest.

72. As such, the restrictions are facially unconstitutional under the First Amendment.

## SECOND CLAIM
### (First and Fourteenth Amendment: The Clean Zone speech restrictions are unconstitutionally vague and overbroad.)

73. Plaintiffs reallege and reincorporates the above allegations.

74. The Clean Zone restrictions leave critical terms undefined, thereby failing to give speakers notice of what activities are prohibited.

75. The restrictions also give little or no clear guidance to law enforcement, thereby encouraging arbitrary or selective enforcement.

76. Plaintiffs' proposed speech activities are chilled by fear of arrest and prosecution under the restrictions.

77. The restrictions therefore are unconstitutionally vague.

78. Additionally, even if the restrictions are found to have a legitimate sweep, those restrictions are substantially overbroad because they criminalize a substantial amount of protected speech relative to any legitimate sweep.

## THIRD CLAIM
### (The First and Fourth Amendments: The Clean Zone restrictions are unconstitutional as applied to Mr. Fontana and resulted in his unlawful arrest.)

79. Plaintiffs reallege and reincorporates the above allegations.

80. Irrespective of the facial constitutionality of the Clean Zone, Mr. Fontana's arrest pursuant to the Clean Zone or any other ordinances cited herein violates his First Amendment rights because he was engaged in protected speech in a public forum, as well as the rights of SOWL because Mr. Fontana was acting as its president and on its behalf.

81. Defendants the City, Cantrell, Harrison, and Ferguson adopted a formal policy and practice of arresting people for exercising free speech. Those Defendants also failed to adequately train, supervise, and/or discipline Officers Schechter, Bakewell, and Jackson and other agents of the NOPD under their supervision, as to the unlawful conduct described in the above allegations.

82. Defendants the City, Cantrell, Harrison, and Ferguson acted and failed to act with gross negligence, recklessness, and deliberate indifference to Plaintiffs' clearly established constitutional rights.

83. Defendants the City, Cantrell, Harrison, and Ferguson's conduct directly and proximately caused the deprivations of Plaintiffs' clearly established constitutional rights, and also directly and proximately caused the other individual Defendants to deprive Plaintiffs of those rights.

## FOURTH CLAIM
**(The First and Fourteenth Amendments: The Clean Zone restrictions are unconstitutional as violative of the equal protection clause.)**

84. Plaintiffs reallege and reincorporates the above allegations.

85. The Clean Zone speech restrictions violate the Equal Protection Clause by discriminating against certain individuals in a manner that implicates a fundamental right.

86. The restrictions violate the Due Process Clause by allowing government-favored speech and disallowing all other speech in the Clean Zone.

87. The restrictions violate the Due Process Clause further by vesting unbridled discretion in a private entity – the French Quarter Festival – to control the content of speech in the Clean Zone.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs SOWL and Luke Fontana, having no adequate remedy at law, request the following:

1. A temporary restraining order, preliminary injunction and eventually, permanent injunction barring Defendants and their agents from enforcing any "clean zone" Ordinance in a manner that restricts free speech under the First Amendment;

2. A declaratory judgment that the Ordinance is unconstitutional;

3. A declaratory judgment that Mr. Fontana's arrest was unconstitutional;

4. Compensatory damages;

5. Nominal damages;

6. Reasonable attorneys' fees, expenses and costs under 42 U.S.C. § 1988 and any other applicable law; and

7. Any equitable and additional relief which the Court deems proper.


Respectfully submitted by:

/s/ *Bruce Hamilton*
Katie Schwartzmann, La. Bar No. 30295
Bruce Hamilton, La. Bar No. 33170
ACLU Foundation of Louisiana
P.O. Box 56157
New Orleans, Louisiana 70156
Telephone: (504) 522-0628

Facsimile: (504) 613-6511
Email: bhamilton@laaclu.org
kschwartzmann@laaclu.org

*Counsel for Plaintiffs*